PUTNAM *v*. HUTCHINSON.

SAME *v*. HUTCHINSON.

SAME *v*. LOMAX.

(*Circuit Court, N. D. Illinois.* April 17, 1882.)

1. REISSUE—DISCLAIMER.

Where an application for a patent was rejected because of want of novelty, on reference to a prior invention, and on a reapplication it was granted because of a disclaimer by the patentee of certain claims made on the prior application, *held*, that a reissue to the assignee of the inventor, on claims including those disclaimed by the prior patentee, is invalid as to such claims.

2. SAME—ENLARGING CLAIM.

Where, on application for a patent, the examiner denied the application on the ground that he deemed certain claims anticipated by a prior device, it is not a "mistake or inadvertence" such as will entitle the assignee of the patentee to a reissue; the remedy in such cases is by appeal.

3. IMPROVEMENT IN BOTTLE-STOPPERS.

The first three claims in reissued patent No. 9,002, of original patent No. 156,302, for an improvement in bottle-stoppers, are invalid because too broad, including claims which had been disclaimed by the inventor on the original application.

*J. P. Altgeld, B. F. Thurston,* and *A. von Briesen,* for complainant.
*West & Bond,* for defendants.

BLODGETT, D. J.   The complainant in these cases charges defendants with the infringement of reissued patent No. 9,002, issued to complainant on the twenty-third of December, 1879, (on application for reissue, filed October 30, 1879,) as assignee of Joel B. Miller, for an "*improvement in bottle-stoppers,*" the original patent having been issued to Miller on the twenty-seventh of October, 1874, No. 156,302. The bill prays an injunction and an accounting in the usual form.

The original patent was for an internal bottle-stopper, with a handle or bail hinged to the stopper passing upward through the neck of the bottle, made staple-shaped, the upper end or top being formed into a loop large enough to prevent it from dropping into the bottle, the bail being made of steel wire or other elastic metal, so that the two legs of the staple or bail would form springs which pressed against the throat of the bottle.   By this handle or bail the stopper could be drawn up into the throat, when it was desired to close the bottle, or pushed downward for the purpose of opening it, and the two legs of the bail pressing against the sides of the throat aided in holding the stopper in place.

In his application for a patent Miller claimed, broadly: "*An attachment to a bottle-stopper, by means of which a stopper inside the bottle may be operated to open or close the throat of the bottle, substantially as shown and described.*" This claim was rejected by reference to the patent of Parkhurst. Amended specifications were filed, and the application again rejected upon the same reference. Another amendment was made, with claim in the following words: "What I claim is: The stopper, B, located inside the bottle, provided with a bail or handle, C, pivoted or hinged to the stopper, and having a loop or eye, F, at its upper end, as and for the purpose described." This was rejected on reference to the invention of W. H. Hall, filed May 30, 1868. Miller then took leave to again amend, and filed substantially the same specifications, containing the following disclaimer: "I am aware that internally-located bottle-stoppers have been provided with vertical rigid handles or stems for manipulating the same, but owing to the rigid character of the handle the stopper is apt to be forced down into the bottle during transportation; and furthermore, in dispensing the contents of the bottle a rigid handle will interfere with the free flow of the liquid." And upon this last specification and disclaimer a patent was issued to him with the following claim: "The internally-located bottle-stopper, B, provided with a hinged or jointed handle or bail, C, composed of two elastic legs or branches, and an eye or finger loop, as and for the purpose set forth."

Miller having died, the complainant, in October, 1879, obtained an assignment of the patent, and procured the reissue now before the court, in which he was permitted to eliminate the disclaimer from the patent, and was allowed four claims instead of one. The first three of these new claims cover a bottle-stopper with a bail or staple-shaped handle or stem fixed rigidly to the stopper; while the fourth claim of the reissue is substantially the same as the single claim of the original patent. In these cases the defendants are charged with infringing the three new claims obtained by the reissue. In other words, complainant has been allowed to claim and cover by his reissue the very feature or elements in bottle-stoppers of this class which by the disclaimer in his original patent he said were old, and not the subject-matter of a patent, and the sole contest in these cases is as to the validity of these additional claims.

Can complainant, after the death of Miller, who made all the invention there is in this patent, be permitted to reclaim what Miller had solemnly disclaimed, and declared was old?

The defendants make and use bottle-stoppers with a spring bail or handle rigidly attached to the stopper, and one of them, George C. Hutchinson, has obtained a patent dated in April, 1879, over six months before this reissue was made, for a bottle-stopper substantially like that which all the defendants are making and using. This reissued patent was before the United States circuit court for the district of Connecticut in the case of this complainant against Tinkham, in October, 1880, and the learned district judge of that district held the reissue void as to these new claims, on the ground that it appears upon its face to be a different invention from that described in the patent; and, upon the same testimony, this court would, of course, feel bound by that decision. *Putnam* v. *Tinkham,* 4 FED. REP. 411.

But it is urged that the proof in these cases differs from that in the case before Judge Shipman, for the reason that additional papers from the file wrapper of the original Miller patent and the Hall drawing are before us, and it appears from these that the Hall bottle-stopper referred to was shown only in a rejected application on file in the patent-office; that Hall never had a patent for his device.

Prior to the decision of the *Corn-planter Cases,* 23 Wall. 181, it was the practice of the patent-office to refuse patents when the device was shown in rejected applications on file in the office, but the court held in those cases that such rejected applications must be considered as abandoned experiments, and should not be allowed to defeat a patent.

The drawing of the Hall application, which is now before the court for the first time in the litigation over this reissued patent, shows a handle or stem rigidly attached to an internal stopper, and projecting up through the throat of the bottle, where it was held in place by a spiral spring and a bar reaching across the mouth of the bottle. Is it probable that Judge Shipman, had this new proof been before him, would have held these three new claims valid? It seems to me that the additional proof does not relieve this reissue from the objections made to it in the *Tinkham Case.*

The difficulty with this patent is that Miller, who must be presumed to have known what he had invented, solemnly told the whole world, by his disclaimer, that he was not the inventor of an "internally-located bottle-stopper, with a rigid stem or handle." It is true that his device differed from that to which reference was made, in that his showed the element of the bow or spring which pressed upon

the sides of the throat of the bottle, and thereby aided in holding the stopper in place either open or closed.   But for the sake of obtaining his patent upon the hinge or joint by which the bail was attached to the stopper, and which he seems to have deemed the most material or valuable part of his invention, he abandoned this bow or staple-shaped spring element to the public, except when combined with the joint or hinge.   When he was referred to this Hall device, with its straight rigid stem, as anticipating his invention, he should have appealed from the examiner who decided against him, but instead of doing so he at once acquiesced in the decision, abandoned the bail rigidly attached to the stopper, and took his patent only on the hinged bail, thereby freely surrendering to the public all the features of his bail, which differed from Hall's, except the hinged or jointed spring bail.   He reserved the spring bail, but it was a spring bail jointed to the stopper.

Since these cases were argued the supreme court has decided the case of *Miller* v. *Bridgeport Brass Co.* 12 O. G. 667, and some part of the opinion bears so pertinently upon the validity of this re-issue that I quote from it:

"Now, while, as before stated, we do not deny that a claim may be enlarged in a reissued patent, we are of opinion that this can only be done when an actual mistake has occurred, not from a mere error of judgment, (for that may be rectified by appeal,) but a real *bona fide* mistake, inadvertently committed, such as a court of chancery, in cases within its ordinary jurisdiction, would correct.

"Reissues for the enlargement of claims should be the exception and not the rule; and when, if a claim is too narrow—that is, if it does not contain all that the patentee is entitled to,—the defect is apparent on the face of the patent, and can be discovered as soon as that document is taken out of its envelope and opened, there can be no valid excuse for delay in asking to have it corrected.

"Every independent inventor, every mechanic, every citizen, is affected by such delay, and by the issue of a new patent with a broader and more comprehensive claim.   The granting of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the power to grant reissues, and may justly be declared illegal and void.   It will not do for the patentee to wait until other inventors have produced new forms of improvement, and then, with the new light thus acquired, under pretence of inadvertence and mistake, apply for such an enlargement of his claim as to make it embrace these new forms.

"Such a process of expansion, carried on indefinitely, without regard to lapse of time, would operate most unjustly against the public, and is totally unauthorized by the law.   In such a case, even he who has rights and sleeps upon them, justly loses them."

The reissue now before me was not obtained on any valid claim or pretext of "inadvertence or mistake." All that could have been urged is what is urged here, that the examiner had denied an application for the patent on the ground that he deemed it anticipated by the device of Hall. This was not, I think, a "mistake or inadvertence," within the meaning of the patent law, such as entitled Miller's assignee to a reissue. It was at most an erroneous ruling by an officer having *quasi* judicial powers, and which could have been appealed from and presumably corrected; for the *Corn-planter Cases* were decided within a month or two after Miller's application was denied on the Hall reference, but Miller conceded the correctness of the ruling, and disclaimed the rigid bail or stem, with or without the spring element, and took his patent on the hinged bail alone.

I think Putnam, when he bought this patent, took it with all the concessions Miller had made for the purpose of obtaining it, and should not have been allowed in the reissue that which Miller had surrendered, especially after so much time had elapsed and the public had, as the proof shows in this case, begun the use of that which Miller had made public property.

For these reasons I must dismiss these bills, on the ground of the invalidity of the first three claims in the reissue, which are the only ones the defendants are charged with infringing.